IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:07-CV-201-BO

| | |
|---|---|
| VICKIE JERNIGAN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | O R D E R |

This matter is before the court on parties' Cross-Motions for Judgment on the Pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff argues that the Commissioner erred in determining Plaintiff's residual functional capacity ("RFC") and in finding that Plaintiff could return to her past relevant work as a sewing machine operator, despite Plaintiff's severe depression and other physical and mental impairments. The Commissioner argues that the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence. For the reasons discussed below, the Judgment is REVERSED and the case is REMANDED for a calculation of benefits.

I.  SUMMARY OF THE INSTANT DISPUTE

Plaintiff is 44 years old, is 5 feet 11 inches tall and weighs 329 pounds. Transcript ("T") p. 208. The last time Plaintiff worked was June 6, 2004: six months after she underwent major surgery for her colon cancer and five months before she gave birth to her son. Plaintiff suffers from dysthymia, generalized anxiety disorder, bipolar disorder, personality disorder, neuropathy

of the wrists, joint pains, panic attacks, hypertension, and hyperlipidemia. From 2003 to present, Plaintiff was managed by internal medicine physicians from the Columbus Internal Medicine Group for colon cancer, hypertension, hyperlipidemia, arthritis, headaches, anxiety, and depression. T pp. 78-95.

Plaintiff has dealt with four main medical personnel: (1) Dr. Miriam Fernz, her internist; (2) Dr. Walters, the surgeon who operated on her colon cancer; (3) Dr. Dibala, a psychiatrist; and (4) Dr. Wilson, who took over for Dr. Dibala on June 26, 2006, as Plaintiff's treating psychiatrist. Dr. Fernz prescribed Wellbutrin, Xanax, and Lexapro for Plaintiff's anxiety and depression, Monopril for her hypertension, and Tricor for her high cholesterol. T p. 95. On November 28, 2005, Dr. Dibala diagnosed Plaintiff with attention deficit disorder, hyper/impulsive disorder, bipolar II disorder, and post-traumatic stress disorder. T p. 170. Dr. Dibala also recommended therapy and medication management, which included Wellbutrin and Seroquel. T p. 171.

On September 26, 2006, Ms. Enzor, a board certified licensed clinical social worker, and Dr. Wilson completed a physician's statement regarding Plaintiff's ability to work. T p. 155. Ms. Enzor and Dr. Wilson found that Plaintiff had persistent bipolar II disorder and personality disorder, required Seroquel, Wellbutrin, Topomax, and Lexapro daily in order to keep her mood stable, and that it would be highly improbable for Plaintiff to be gainfully employed. T p. 155.

On December 4, 2006, Dr. Fernz completed a residual functional capacity ("RFC") questionnaire in which she found Plaintiff RFC to be less than sedentary. T pp. 182-87. Dr. Fernz made this finding based on Plaintiff's history of colon cancer, bipolar disorder, extreme depression, and Plaintiff's inability to function well with others due to her mental conditions. *Id.*

Plaintiff applied for Social Security Disability Benefits with an alleged onset date of September 1, 2004. T p. 48. Plaintiff was denied benefits on February 16, 2006, and requested reconsideration on February 24, 2006. T p. 48. Reconsideration was denied on May 19, 2006, and Plaintiff requested a hearing on June 6, 2006. T pp. 41, 48-49. A hearing was held on December 11, 2006, and ALJ Talbot rendered an unfavorable decision on April 20, 2007. T pp. 14-24, 201-14.

Plaintiff requested review of the hearing decision by the Appeals Council on June 22, 2007. T p. 13. Review was denied on August 3, 2007. T pp. 9-11. Plaintiff timely commenced this action for Judicial Review on December 12, 2007. Defendant filed an Answer and the transcript on March 6, 2008. This Court has ordered that this action proceed by Motion for Judgment on the Pleadings, and this motion is now before the Court.

## II.  DISCUSSION

This Court's review of the Commissioner's decision is limited to determining whether the Commissioner's decision, as a whole, is supported by substantial evidence and whether the Commissioner employed the correct legal standard.[1] The Commissioner's decision to disregard Plaintiff's treating physician's RFC and that Plaintiff could return to her past relevant work as a sewing machine operator was not supported by substantial evidence and, accordingly, is REVERSED.

### A.  The ALJ erred when he determined Plaintiff's RFC because he did not properly

---

[1] 42 U.S.C. § 405(g).

-3-

Case 7:07-cv-00201-BO   Document 27   Filed 10/28/08   Page 3 of 8

> take into account the medical documents and statements of Plaintiff's treating physician.

The regulations require that the findings of the treating physician be accorded controlling weight if they are well-supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record.[2] The opinion of a claimant's treating physician must be given great weight and may be disregarded only if there is persuasive contrary evidence.[3]

None of the ALJ's alleged "contrary evidence" to Dr. Fernz's opinions is persuasive. The ALJ disregarded Dr. Fernz's RFC for four main reasons: (1) Dr. Fernz failed to provide a copy of the nerve conduction study to substantiate her diagnosis of neuropathy; (2) Dr. Fernz did not provide office notes documenting the signs or symptoms of neuropathy; (3) there was no evidence of recurrence of cancer or complication of surgery; and (4) there was no evidence that Dr. Fernz had seen the claimant since December 22, 2005. T pp. 22-23.

First, failure to provide records that were not requested does not constitute contrary evidence. In fact, the ALJ has an obligation to develop the record fully and fairly, which requires him to obtain reports and records from a claimant's treating physicians and to inquire into the issues necessary for adequate development of the record.[4] The ALJ cannot rely on the evidence

---

[2] 20 CFR § 416.1527(d)(2).

[3] *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

[4] *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).

-4-

submitted by the claimant when he feels that the evidence is inadequate.[5] Furthermore, a treating physician must be re-contacted when the evidence is inadequate for the Commissioner to determine whether the claimant is disabled.[6]

Thus, the failure to provide documentation of the signs and symptoms of neuropathy and of Dr. Fernz's nerve conduction study cannot be faulted to the Plaintiff when it was the ALJ's duty to request such records if he felt they were necessary for the record. Because they served as reasons for the ALJ to disregard a treating physician's opinion, the ALJ felt these records were necessary. Accordingly, it was the ALJ's duty, not Plaintiff's, to request the records.

Second, the ALJ erred in determining that there were no complications from the right hemicolectomy. Once again, the record is not sufficiently developed in this area. It is unclear where Plaintiff's emotional difficulties stem from and unclear where the limitations on her ability to twist, stoop, crouch, climb stairs, and climb ladders originate. There is some suggestion that these problems could have stemmed from her cancer and subsequent abdominal surgery. Thus, as above, the ALJ cannot fault Plaintiff for an insufficient record.

Finally, the ALJ's concerns about when Dr. Fernz last saw Plaintiff is not sufficient contrary evidence to disregard Dr. Fernz's opinions. This Court has previously held that "the opinion of an examining physician as to the onset of disability is relevant and may be considered even if the opinion is primarily based on a claimant's past medical history."[7] A medical opinion does not become unacceptable simply because it is based upon medical records and lay

---

[5] *Id.*

[6] 20 C.F.R. § 404.1512(e).

[7] *Necessary v. Bowen*, 671 F.Supp. 1086, 1091 (E.D.N.C. 1987).

-5-

testimony.[8]

In Necessary v. Bowen, the ALJ was concerned that the doctor's evaluation was more an analysis of prior reports than an evaluation of the doctor's findings based on the doctor's examination of the client.[9] Similarly here, the ALJ was concerned that Dr. Fernz evaluated Plaintiff by analyzing prior reports. As this Court said in Necessary, however, "this fact should have played no part in the ALJ's decision."[10] Thus, the ALJ failed to cite any reason, much less persuasive contrary evidence, to disregard Dr. Fernz's opinion.

    B.    The ALJ erred in finding that Plaintiff could return to her past relevant work as a sewing machine operator despite her severe depression and other physical impairments.

The job of sewing machine operator is characterized as light work that requires a reasoning level of 3, which means that the individual must be able to apply common sense and understanding to carry out instructions furnished in writing, oral, and diagrammatic form and deal with problems involving several concrete variables in or from standardized situations.[11] Plaintiff's dysthmia results in poor concentration or difficulty making decisions[12] and Plaintiff's

---

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]Dictionary of Occupational Titles number 787.682-066; *see also* Dictionary of Occupational Titles, Appendix C.

[12]349 Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (1994).

-6-

anxiety disorder also causes difficulty concentrating or mind going blank.[13] In addition, Plaintiff's inabilitly to concentrate, poor appetite or overeating, mind going blank, and irritability and sleep disturbances are well documented in the medical evidence.

The ALJ found that Plaintiff was restricted to "simple, routine, repetitive job tasks." T p. 23. However, "simple, routine, repetitive job tasks" are a reasoning level 1,[14] and Plaintiff's former job as sewing machine operator requires a reasoning level 3. Because the ALJ's own findings about Plaintiff's occupational restrictions do not support a finding that Plaintiff can return to her previous relevant work, the ALJ erred in finding that Plaintiff could return to her work as a sewing machine operator.

### III. CONCLUSION

Therefore, the ALJ erred when he improperly disregarded Plaintiff's treating physician's opinion and because the ALJ's own findings about Plaintiff's occupational limitations do not support a finding that Plaintiff could return to her work as a sewing machine operator.

The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the court."[15] Accordingly, the court in its discretion REVERSES the judgement and the case is REMANDED for a calculation of benefits.

---

[13] 436 Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (1994).

[14] Dictionary of Occupational Titles, Appendix C.

[15] *Edwards v. Bowen*, 672 F.Supp.230, 237 (E.D.N.C. 1987).

-7-

SO ORDERED, this __24__ day of October 2008.

                                                TERRENCE W. BOYLE  
                                                UNITED STATES DISTRICT JUDGE